IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:21-CV-165-D

| | |
|---|---|
| JOSEPH ELLIOTT PORTER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>AHP SETTLEMENT TRUST, )<br>)<br>Defendant. ) | **MEMORANDUM AND RECOMMENDATION** |

This pro se case is before the court on the motion to proceed in forma pauperis under 28 U.S.C. § 1915(a)(1) [D.E. 1] by plaintiff Joseph Elliott Porter ("plaintiff") and for a frivolity review pursuant to 28 U.S.C. § 1915(e)(2)(B). This matter was referred to the undersigned magistrate judge, pursuant to 28 U.S.C. § 636(b)(1). [D.E. 4]. However, for the reasons explained below, it will be recommended that this action be transferred to the United States District Court for the Eastern District of Pennsylvania.

**I.      BACKGROUND**

Plaintiff filed a motion to proceed *in forma pauperis* with an attached complaint on October 1, 2021. [D.E. 1]. In his complaint, plaintiff alleges that he is entitled to payment by defendant AHP Settlement Trust ("defendant"), for negotiating and settling a claim against defendant on behalf of claimant Miguel A. Larrieu ("claimant Larrieu"). *See* [D.E. 1-1]; [D.E. 1-2]. Specifically, plaintiff alleges that at the request of claimant Larrieu's family, he became claimant Larrieu's "attorney-in-fact" for the specific purpose of negotiating a settlement between claimant Larrieu and defendant. [D.E. 1-2] at 3. Plaintiff alleges that he successfully negotiated and settled a claim on behalf of claimant Larrieu, and pursuant to a signed limited power of attorney, he was entitled to a portion of the total settlement amount. *Id.* at 4; *see also* [D.E. 1-5]. However, plaintiff

alleges that defendant failed to pay him any portion of the settlement, improperly remitting the full settlement amount to claimant Larrieu and his family. [D.E. 1-2] at 4.

Plaintiff acknowledges that prior to filing the instant motion to proceed *in forma pauperis* and proposed complaint, he filed "essentially the same complaint" in a different United States District Court, but that it was "closed solely due to 'improper service . . . .'" [D.E. 5]. Indeed, it appears that plaintiff previously filed two separate complaints alleging the same underlying facts in the United States District Court for the District of South Carolina on July 24, 2019 and then May 7, 2020. *See Porter v. AHP Settlement Trust*, 4:19-cv-2069-DCC-TER; *Porter v. AHP Settlement Trust*, 4:20-cv-1786-DCC-TER. Notably, however, in both cases the District of South Carolina found that the United States District Court for the Eastern District of Pennsylvania is the proper venue for plaintiff's claims and venue was transferred to the Eastern District of Pennsylvania. *See Porter v. AHP Settlement Trust*, No. 4:19-cv-02069-DCC, 2019 WL 4126480 (D.S.C. Aug. 30, 2019); *Porter v. AHP Settlement Trust*, No. 4:20-cv-01786-DCC, 2020 WL 3496553 (D.S.C. June 29, 2020).

## II. DISCUSSION

In transferring venue to the Eastern District of Pennsylvania, the District of South Carolina court correctly notes that while plaintiff is a *pro se* litigant whose filings should be liberally construed, such limits are not without bounds. *Porter v. AHP Settlement Trust*, No. 4:19-2069-DCC-TER, 2019 WL 5856270, at *1 (D.S.C. Aug. 2, 2019), *rep. & recomm. adopted*, 2019 WL 4126480 (citing *Beaudett v. City of Hamptom*, 775 F.2d 1274, 1278 (4th Cir. 1985); *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993); *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999)). And, that "the court has the power to consider *sua sponte* whether venue is proper." *Porter*, 2019 WL 5856270, at *1 (citing *Jensen v. Klayman*, 115 F. App'x 634, 635-36 (4th Cir. 2004)); *see also* 28

U.S.C. § 1406(a) ("[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought"); *Porter v. Groat*, 840 F.2d 255, 258 (4th Cir. 1988) (holding that a transfer may be made pursuant to section 28 U.S.C. § 1406(a) for any reason which constitutes an impediment to a decision on the merits even where venue is proper in the transferor court); *see also Quinn v. Watson*, 145 Fed. Appx. 799, 800 (4th Cir. 2005) (holding that "the choice to transfer or dismiss a case afforded by § 1406(a) lies within the sound discretion of the district court"). Based on its review of plaintiff's prior complaints, the District of South Carolina court determined that "[t]he interests of justice weigh *heavily* in favor of transferring th[e] action." *Porter*, 2019 WL 5856270, at *2 (emphasis added). Plaintiff's filings in this district are nearly identical to those made in the District of South Carolina, except plaintiff now appears to reside within the Eastern District of North Carolina. In applying the same analysis as the court in the District of South Carolina, the undersigned finds that the interests of justice weigh in favor of transfer. Therefore, as discussed below, it is recommended that this matter once again be transferred to the Eastern District of Pennsylvania.

As explained by the District of South Carolina court in transferring plaintiff's initial case, "[i]n 1997, the Judicial Panel on Multidistrict Litigation established an MDL proceeding in the Eastern District of Pennsylvania and transferred pending federal diet drug cases." *Id.* at 1. Since that time, "[t]housands of additional diet drug cases have [] been transferred to the MDL Court as tag-along cases." *Id.* (citing *In re Massachusetts Diet Drug Litig.*, 338 F. Supp. 2d 198, 199-200 (D. Mass. 2004)). Following a 1999 nationwide class action settlement agreement by American Home Products approved by the MDL court in August 2000, "a structure to compensate class members who were harmed by the[se] diet drugs" was created. *Porter*, 2019 WL 5856270, at *1

3

(citing *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, Nos. 1203, 99-20593, 2000 WL 1222042 (E.D. Pa. Aug. 28, 2000)). The MDL court held that "[t]he United States District Court for the Eastern District of Pennsylvania has original jurisdiction over all provisions of the Settlement Agreement including the creation and operation of the Settlement Trust and the award of attorneys' fees and reimbursement of litigation expenses, pursuant to 28 U.S.C. § 1332 (Ex. P-3 at 130 of 148)." *Porter*, 2019 WL 5856270, at *1 (quoting *In re Diet Drugs*, 2000 WL 1222042, at *33). The MDL court further noted:

> Without affecting the finality of this Final Order and Judgment in any way, the court hereby retains continuing and exclusive jurisdiction over this action and each of the Parties, including AHP and the class members, to administer, supervise, interpret and enforce the Settlement in accordance with its terms; to supervise the operation of the Settlement Trust; to determine applications for and make reasonable awards of attorneys' fees and reimbursement of costs to Class and Subclass Counsel, the Plaintiffs' Management Committee, and others for work contributing to the common benefit of the class; and to enter such other and further orders as are needed to effectuate the terms of the Settlement.

*Porter*, 2019 WL 5856270, at *2 (quoting *In re Diet Drugs*, 2000 WL 1222042, at *72).

The District of South Carolina court determines that "[p]laintiff's allegations directly involve provisions of the Settlement Agreement regarding Matrix determinations and cardiologist audits, which are specifically mentioned in the MDL court's order [that] contain[s] the exclusive jurisdiction provision." *Porter*, 2019 WL 5856270, at *2. The court notes that "the Matrix and claim forms" attached by plaintiff to his complaint "further demonstrate[] how the allegations are directly related to matters that were ordered to be within the exclusive jurisdiction of the MDL court." *Id.* And "[i]n the MDL context, where the concerns are similar, transfer serve[s] the interests of justice, judicial efficiency, and consistency, especially where the action is complex and the transferee district is 'readily familiar with the underlying issues' and 'has already spent considerable time and effort coordinating the pretrial proceedings.'" *Id.* (quoting *In re Welding*

4

*Rod Prods. Liab. Litig.*, 406 F. Supp. 2d 1064, 1067 (N.D. Cal. 2005)).  It is noted that there have been over 5,000 filings in the Eastern District of Pennsylvania MDL case relating to diet drugs over the past 20 years, evincing that the Eastern District of Pennsylvania "would be readily familiar with [p]laintiff's allegations and the applicable provisions of the Settlement Agreement . . . ." *Porter*, 2019 WL 5856270, at *2.

      As discussed above, plaintiff here acknowledges that he has filed "essentially the same complaint" in this case as he did in the earlier cases transferred to the Eastern District of Pennsylvania.  [D.E. 5].  For example, plaintiff alleges that claimant Larrieu was a member of a "nationwide class action settlement agreement" for "qualifying diet drug users suffering from valvular heart disease . . . ." [D.E. 1-2] at 1.  That defendant was formed as a trust under the MDL agreement and was responsible for determining whether claimants were entitled to compensation under the MDL agreement.  *Id.*  And, that he negotiated a settlement on behalf of claimant Larrieu pursuant to the MDL agreement and is thus entitled to compensation.  *Id.* at 1-9.  As in his prior cases, these "allegations directly involve provisions of the Settlement Agreement regarding Matrix determinations and cardiologist audits, which are specifically mentioned in the MDL court's order [that] contain[s] the exclusive jurisdiction provision." *Porter*, 2019 WL 5856270, at *2.  Plaintiff also again attaches copies of a Matrix form and claim form in support of his complaint here (*see* [D.E. 1-3]; [D.E. 1-4]), "further demonstrat[ing] how the allegations are directly related to matters that were ordered to be within the exclusive jurisdiction of the MDL court" (*Porter*, 2019 WL 5856270, at *2).

      Because the Eastern District of Pennsylvania is "'readily familiar with the underlying issues' and 'has already spent considerable time and effort coordinating the pretrial proceedings[,]'" transfer here would once again "serve the interests of justice, judicial efficiency,

and consistency . . . ." *See Porter*, 2019 WL 5856270, at *2 (quoting *In re Welding*, 406 F. Supp. 2d at 1067). Accordingly, it is RECOMMENDED that this case be transferred to the Eastern District of Pennsylvania, the proper forum for plaintiff's claims.[1]

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on plaintiff or, if represented, his counsel. Plaintiff shall have until **July 11, 2022** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

---

[1] To note, in his subsequent filings with this court, plaintiff acknowledges that the Eastern District of Pennsylvania has proper jurisdiction over claims involving litigation under the MDL agreement, such as his current claim. *See* [D.E. 5] at 1 ("In essentially the same complaint that was closed solely due to 'improper service' * by the very Judge appointed to oversee MDL 1203, the Honorable Senior District Court Judge Harvey Bartle, I as Plaintiff submitted the same forma pauperis request that was approved by the 3rd Court of Appeals . . . ."); [D.E. 8] at 1 ("If the complaint was frivolous the Honorable Superior [sic] Court Judge Harvey Bartle III, appointed to oversee the 'fen-phen' litigation that was designated a class action, MDL 1203 would have previously dismissed it with prejudice."). Additionally, upon transferring plaintiff's second case to the Eastern District of Pennsylvania, the District of South Carolina also provides the following warning to plaintiff regarding the proper venue for his action:

> Because of the prior transfer of this same dispute by the District of South Carolina to the Eastern District of Pennsylvania, Plaintiff was fully aware filing this action again in this venue in South Carolina was improper. Out of an abundance of caution, Plaintiff's action is transferred again as the dismissal from the Eastern District of Pennsylvania was without prejudice. However, pursuant to the court's inherent power to control and protect the administration of court proceedings, Plaintiff is on notice if he files this same action inappropriately a third time in this District, it may be subject to dismissal and not transfer. *See White v. Raymark Indus., Inc.*, 783 F.2d 1175, 1177 (4th Cir. 1986).

*Porter v. AHP Settlement Trust*, 4:20-1786-DCC-TER [D.E. 4], *rep. & recomm. adopted*, 2020 WL 3496553.

**If plaintiff does not file written objections to the Memorandum and Recommendation by the foregoing deadline, plaintiff will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, plaintiff's failure to file written objections by the foregoing deadline will bar plaintiff from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

Submitted, this the 24th day of June, 2022.

Brian S. Meyers
United States Magistrate Judge